JAMES R. KELLER *et al.*, d/b/a Lincolnland Boat Company, Plaintiff-Appellant, *v.* BRUNSWICK CORPORATION, Defendant-Appellee.

Fourth District   No. 13961

Opinion filed October 28, 1977.—Rehearing denied December 1, 1977.

Ensel, Jones, Blanchard & LaBarre, of Springfield (Alfred B. LaBarre, of counsel), for appellant.

Sorling, Northrup, Hanna, Cullen and Cochran, Ltd., of Springfield (Patrick V. Reilly, of counsel), for appellee.

Mr. JUSTICE REARDON delivered the opinion of the court:

On December 4, 1975, plaintiff filed a two-count complaint in the circuit court for the seventh judicial circuit, Sangamon County, seeking $200,000 damages plus costs on each count. In count I, plaintiff alleged that defendant violated the Wisconsin Fair Dealership Law (Wis. Stat. 1973, ch. 179, pars. 135.03, 135.04, 135.06) by failing to renew the parties' Mercury Marine franchise agreement, which was labeled a "direct sales contract," without substantially changing plaintiff's "competitive circumstances," and by failing to give plaintiff 90 days written notice of a proposal to franchise Illini Sporting Goods as a second Mercury Marine dealer in Sangamon County in October 1975. In count II, plaintiff alleged that the defendant violated its duty to renew plaintiff's franchise without substantial change in the franchise terms or in plaintiff's competitive circumstances.

On January 21, 1976, defendant filed a motion for judgment on the pleadings pursuant to section 45 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 45). Memoranda supporting and opposing the motion were filed and the court heard the arguments of counsel. On May 27, 1976, the court entered judgment granting defendant's section 45 motion. Plaintiff appeals that judgment.

As is typical in appeals from dismissals pursuant to section 45, uncontested, well-pleaded allegations of fact shall be, for the purposes of review, deemed to be true. *Bulk Terminals Co. v. Environmental Protection Agency* (1976), 65 Ill. 2d 31, 357 N.E.2d 430; *Acorn Auto Driving School, Inc. v. Board of Education* (1963), 27 Ill. 2d 93, 96, 187 N.E.2d 722.

The plaintiff, Lincolnland Boat Company, is a partnership engaged in the business of selling Mercury Marine Products at retail in Sangamon County, Illinois. The defendant, Brunswick Corporation, is a Delaware corporation engaged in the business of manufacturing and selling Mercury Marine Products at wholesale from its factory and office in Fond du Lac, Wisconsin. The facts upon which the complaint is based are as follows: On October 9, 1974, the parties entered into a written franchise agreement or contract which, by its terms, would terminate on August 31, 1975. The printed contract recited that it was entered into at Fond du Lac, Wisconsin, that shipments were to be made F.O.B. at Fond du Lac, Wisconsin, that all orders placed by plaintiff were subject to acceptance in

Wisconsin by defendant, and that title to all goods sold and any shipping risks were to be passed to plaintiff upon delivery to the shipper in Wisconsin.

The clauses of the parties' contract pertaining to termination provided:

"8. TERM—TERMINATION.

(a) The term of this contract shall be from the date of signing hereof by Seller until the 31st day of August of the following year, provided, however, that either party hereto may forthwith terminate this contract for cause due to breach hereof and may terminate same without cause at any time upon thirty (30) days written notice given to the other party. If Seller shall sell Products to Dealer after expiration or termination of this contract, such sale shall not be deemed a renewal or extension of this contract.

* * *

(c) Seller shall be under no obligation, either express or implied, to refranchise Dealer upon expiration of this contract or in the event of termination prior to expiration.

(d) Neither party hereto shall become liable to the other for loss, damage, expense, or investment of any kind whatsoever incurred on account of or arising, directly or indirectly, because of execution of this contract or in contemplation thereof or because of seller's failure to enter a new contract with Dealer or because of termination of this contract, all rights and claims of that nature being hereby unconditionally and irrevocably waived by both parties to this contract."

Another clause in the contract provided:

"11. INTERPRETATION. This agreement and all of its provisions are to be interpreted and construed according to the laws of the State of Wisconsin. Any provision of this contract which in any wise contravenes or is unenforceable under any law of the nation [or] of the state or states in which this agreement is effective shall be deemed separable and not to be a part of this agreement."

■■ The general rule governing the construction of contracts is that, unless a contract is ambiguous, its meaning must be discovered in the words used. If a contract purports on its face to be a complete expression of the entire agreement, courts should not insert terms about which the agreement is silent or which are contrary to the clear intention of the parties. *National Bank v. West Construction Co.* (1976), 41 Ill. App. 3d 686, 689, 355 N.E.2d 43.

In the instant case, defendant contends that the parties' intention at the time the contract was entered into was that defendant was under no obligation to refranchise plaintiff after the expiration of the contractual term. Plaintiff, however, seeks to have this court distinguish that apparent

intention by enforcing the Wisconsin Fair Dealership Law which provides:

"135.03 CANCELLATION AND ALTERATION OF DEALERSHIPS. No grantor, directly or through any officer, agent or employe may terminate, cancel, fail to renew or substantially change the competitive circumstances of a dealership agreement entered into after the effective date of this act (1973), without good cause. The burden of proving good cause shall be on the grantor.

135.04 NOTICE OF TERMINATION OR CHANGE IN DEALERSHIP. Except as provided in this section, a grantor shall provide a dealer at least 90 days' prior written notice of termination, cancellation, nonrenewal or substantial change in competitive circumstances. The notice shall state all the reasons for termination, cancellation, nonrenewal or substantial change in competitive circumstances and shall provide that the dealer has 60 days in which to rectify any claimed deficiency. If the deficiency is rectified within 60 days the notice shall be void. The notice provisions of this section shall not apply if the reason for termination, cancellation or nonrenewal is insolvency, the occurrence of an assignment for the benefit of creditors or bankruptcy. If the reason for termination, cancellation, nonrenewal or substantial change in competitive circumstances is nonpayment of sums due under the dealership, the dealer shall be entitled to written notice of such default, and shall have 10 days in which to remedy such default from the date of delivery or posting of such notice.

135.06 ACTION FOR DAMAGES AND INJUNCTIVE RELIEF. If any grantor violates this chapter, a dealer may bring an action against such grantor in any court of competent jurisdiction for damages sustained by him as a consequence of the grantor's violation, together with the actual costs of the action, including reasonable actual attorney fees, and the dealer also may be granted injunctive relief against unlawful termination, cancellation, nonrenewal or substantial change of competitive circumstances." Wis. Stat. 1973, ch. 179, pars. 135.03, 135.04, 135.06.

■■ Although a plausible argument can be made in favor of the view that the parties expressly agreed to a termination of their contract on August 31, 1975 (see *Mutual Life Insurance Co. v. Hill* (1904), 193 U.S. 551, 558, 48 L. Ed. 788, 793, 24 S. Ct. 538; Restatement (Second) of Conflict of Laws §187, Explanatory Notes, comment (e), at 565-66; §188, comment (b), at 576-78 (1971)), we reject that argument as not being in accordance with Wisconsin law. The parties' contract recites that the law of Wisconsin shall be referred to in order to interpret and construe the

terms of the contract. Courts have sometimes distinguished between choices of law governing the interpretation of a contract and those governing the validity of a contract. (*E.g., Siegelman v. Cunard White Star Ltd.* (2d Cir. 1955), 221 F. 2d 189; *Nakhleh v. Chemical Construction Corp.* (S.D. N.Y. 1973), 359 F. Supp. 357.) We, however, decline to make that distinction here because the instant contract is clearly a Wisconsin instrument entered into in Wisconsin and intended to be fully performed in Wisconsin. While the parties may have intended to make a limited choice of Wisconsin law in this case, *i.e.*, a choice of the Wisconsin law necessary to interpret only the ambiguous terms of their agreement, we cannot allow such an agreement to violate the clear requirements of the Wisconsin Fair Dealership Law which was in effect when the parties entered their contract. Because theirs was a Wisconsin contract, we have no hesitation in enforcing the clear requirements of the Wisconsin statute.

■■ We are aware of the recent Federal Court of Appeals' decisions involving the same printed form contract employed by the parties in the instant case. (*Boatland, Inc. v. Brunswick Corp.* (6th Cir. Docket No. 76—1386, July 25, 1977), ___ F.2d ___; *C. A. May Marine Supply Co. v. Brunswick Corp.* (5th Cir. Docket No. 76—3410, August 19, 1977), ___ F.2d ___.) In *Boatland,* the court reversed a judgment in favor of Brunswick, while in *C. A. May Marine Supply,* the court affirmed a judgment adverse to Brunswick. In those cases, the courts essentially stated: (1) that the parties intended that the law of Wisconsin apply to their contract; (2) that Wisconsin law was to determine the parties' rights and obligations without restriction to a mere interpretation of the contract; (3) that the contract, if at all ambiguous, should be construed most strongly against its author; (4) that the termination clause of the contract should be severed from the contract because it violated the Wisconsin Fair Dealership Law; and (5) that the Wisconsin statute was not unconstitutionally vague or violative of the parties' rights to due process and freedom of contract.

We find these recent cases to be persuasive and on their authority we reverse the judgment of the circuit court. On remand, the trial court is directed to reinstate plaintiff's complaint and to enforce the provisions of the Wisconsin Fair Dealership Law, striking those provisions of the contract which are inconsistent with the Wisconsin law.

Reversed and remanded with directions.

CRAVEN, P. J., and HUNT, J., concur.